Stephanie J. Goldstein
Shahzeb Lari
FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

*Attorneys for Plaintiff*
  *HG Estate, LLC*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

HG ESTATE, LLC,

                      Plaintiff,

          - against -

CORPORACIÓN DURANGO, S.A. de C.V.,

                    Defendant.

-------------------------------------------------------------------x

**07 CV 10450**

Case No. _____

**COMPLAINT**

        Plaintiff HG Estate, LLC ("HG Estate"), by its undersigned attorneys Fried,

Frank, Harris, Shriver & Jacobson LLP, for its complaint against defendant Corporación

Durango, S.A. de C.V. ("Corporación Durango"), alleges as follows:

### NATURE OF THE ACTION

        1.    HG Estate has been forced to bring this action to enforce the clear and

unequivocal terms and spirit of a release (the "Release") contained in a settlement agreement that

it entered with Corporación Durango in August 2004 (the "Settlement Agreement," attached

hereto as Exhibit A).  The Release was a clearly bargained for provision of the Settlement

Agreement, which ended an arbitration (the "Arbitration") and attendant proceedings in this

Court between HG Estate and Corporación Durango.  Indeed, without Corporación Durango's

assurance that litigation between it and HG Estate would come to a definite end, HG Estate would not have entered into the Settlement Agreement.

2.    Corporación Durango, however, is now attempting to pursue a claim against HG Estate based on the same set of facts and circumstances at issue in the Arbitration. As detailed further below (¶¶ 16-23), as part of a settlement of litigation in New Jersey state court between Corporación Durango and Grant Thornton LLP ("Grant Thornton," HG Estate's prior auditing firm), Corporación Durango secured an assignment of an indemnity claim Grant Thornton had asserted against HG Estate, even though that claim was previously dismissed on summary judgment. Corporación Durango now seeks relief from the order dismissing the indemnity claim.

3.    Corporación Durango's conduct is clearly barred by the Release. Pursuing the indemnity claim against HG Estate, as Corporación Durango is now attempting to do in New Jersey state court — based on many of the arguments it made against HG Estate in the Arbitration — blatantly violates the terms and the spirit of the Settlement Agreement. This Court, which has exclusive jurisdiction over claims relating to the Settlement Agreement, should enforce the contractual obligations Corporación Durango previously agreed to.

## PARTIES

4.    Plaintiff HG Estate is a Delaware limited liability company with its principal place of business at 111 West 50th Street, New York, New York. HG Estate is owned by The Howard Gilman Foundation, Inc., a non-profit charitable organization.

5.    Defendant Corporación Durango is a Mexican *sociedad anónima de capital variable* with its principal place of business at Potasio No. 150, Ciudad Industrial, Durango, Mexico CP 34220.

2

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

7.    This Court has personal jurisdiction over Corporación Durango based on, among other factors, Corporación Durango's agreement that courts located in New York have exclusive jurisdiction over actions relating to the Settlement Agreement:

> All actions, suits or proceedings, whether at law or equity or otherwise, arising out of relating to this Agreement or the subject matter hereof shall be brought exclusively in the state or federal courts located in the County of New York, State of New York. The Parties consent to personal jurisdiction in the State of New York for the purpose of such actions . . . .

Ex. A.  Personal jurisdiction also exists over Corporación Durango based on its transaction of business (including with respect to the Settlement Agreement at issue here) in New York with HG Estate, a New York based company.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because of Corporación Durango's contractual agreement to venue in this district, this Court's jurisdiction over Corporación Durango and Corporación Durango's significant contacts with this district.

## BACKGROUND

### Corporación Durango Purchases Gilman Paper

9.    In December 1999, HG Estate sold its wholly owned subsidiary, Gilman Paper Company (which included a paper mill located in St. Marys, Georgia), to Durango Paper Company ("Durango Paper," together with Corporación Durango, "Durango"), an affiliate of Corporación Durango that was formed to complete the acquisition, for $113.5 million.  The

purchase price consisted of $89 million in cash and a $24.5 million promissory note that Durango issued to HG Estate.  HG Estate also advanced $18.1 million to Durango, evidenced by two promissory notes, to cover the costs of certain environmental compliance costs.

10.     Corporación Durango, having conducted extensive due diligence prior to the acquisition, knew that Gilman Paper's mill at St. Marys had not been profitable in the years preceding its acquisition.  Corporación Durango, however, believed that it would be able to "turn around" the mill — i.e., improve its profitability through cost cutting and a projected upturn in paper prices, which were at a historical low point.  Those plans did not come to fruition.  Plagued by a continuing recession, plummeting prices for paper and its own mismanagement, Corporación Durango closed the St. Marys Mill in September 2002, less than three years after buying Gilman Paper.

<u>**Corporación Durango Sues HG Estate**</u>

11.     In November 2002, just a few weeks before its first payments were to come due on the promissory notes issued in connection with its purchase of Gilman Paper, Corporación Durango, acting as an assignee of Durango Paper, commenced the Arbitration.  The crux of Corporación Durango's claims was that Gilman Paper had improperly capitalized certain expenditures on property, plant and equipment at the St. Marys Mill in its financial statements. Corporación Durango sought approximately $260 million in damages in the Arbitration, as well as a cancellation of the promissory notes.  HG Estate concurrently sought payment of the notes in an action filed in this Court, which was stayed pending resolution of the Arbitration.

<u>**Corporación Durango and HG Estate Settle All Claims**</u>

12.     In June 2004, after the evidentiary hearings in the Arbitration had concluded (but before a ruling), Corporación Durango filed bankruptcy proceedings in Durango,

4

Mexico and obtained a stay of the Arbitration. Soon thereafter, on August 5, 2004, HG Estate entered into the Settlement Agreement with Corporación Durango.

13.    Pursuant to the Settlement Agreement: (i) an affiliate of Corporación Durango paid HG Estate approximately $8 million, (ii) HG Estate cancelled the promissory notes Durango had issued to it, and (iii) Corporación Durango and HG Estate exchanged broad general releases on behalf of themselves and all affiliated persons. Ex. A.

14.    The Release that HG Estate obtained barred liability for all claims — including future or unknown claims — that Corporación Durango could ever assert against it. Specifically, the Release entered into by Corporación Durango states, in pertinent part that:

> "[Corporación Durango] . . . hereby voluntarily and knowingly, unconditionally and absolutely waive[s], remise[s], release[s], acquit[s,] satisf[ies], and forever discharge[s] [HG Estate] . . . from . . . ***all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, at law or in equity, whether known or unknown, asserted or unasserted, suspected or claimed, which [Corporación Durango] . . . ever had, now has, or . . . hereinafter can, shall or may have, against [HG Estate]*** . . . for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents.

Ex. A (emphasis added). HG Estate would not have agreed to the Settlement Agreement without the commitment from Corporación Durango that litigation between them would end with the execution of the Settlement Agreement and Release.

15.    Because the Settlement Agreement was intended to put an end to litigation between HG Estate and Durango, the parties agreed that any breach of the Settlement Agreement, including the incorporated Release, would "irreparably harm every other Party," and

that if any party breached the Settlement Agreement, "the opposing Party or Parties shall be entitled to specific performance and to the immediate entry of an injunction and any other relief as may be available to remedy such a breach." Ex. A at ¶ 21. The Settlement Agreement also provides that a prevailing party is entitled to recover "its costs, damages and expenses, including without limitation, its reasonable attorneys' fees and expert fees, incurred with such action and any appeal thereof." Ex. A at ¶ 20.

**Corporación Durango Sues Grant Thornton**

16.    During the Arbitration, Durango sued Grant Thornton in Texas state court. That suit was precipitated by Grant Thornton's defense in the Arbitration of its unqualified audit opinions for Gilman Paper. Specifically, the Grant Thornton audit partner responsible for Gilman Paper's audits voluntarily submitted a witness statement on HG Estate's behalf, stating, *inter alia*, that Grant Thornton continued to believe that Gilman Paper's financial statements complied with GAAP and industry practice.

17.    In April 2005, Durango voluntarily dismissed its action in Texas state court and refiled in the Superior Court of New Jersey, Law Divison, Middlesex County (the "New Jersey Litigation"). In the New Jersey Litigation, Durango alleged, among other things, that Grant Thornton fraudulently or negligently applied accounting and auditing standards in its audits of Gilman Paper. Grant Thornton vigorously denied the allegations asserted against it by Durango.

**Grant Thornton Unsuccessfully Impleads HG Estate**

18.    In July 2006, Grant Thornton filed a third party complaint against a multitude of parties, including HG Estate. As to HG Estate, Grant Thornton asserted, *inter alia*, a claim for contractual indemnification based on a provision in Grant Thornton's engagement

6

letters with HG Estate.  Pursuant to that provision, HG Estate was to indemnify Grant Thornton

for losses it sustained as a result of false representations made by HG Estate in certain

"management representation" letters addressed to Grant Thornton.

19.    During discovery, Grant Thornton — in sworn testimony from its auditors

and in submissions to the Court — attested that neither HG Estate nor Gilman Paper made any

misrepresentations to it in any of the management representation letters or elsewhere.

20.    On July 5, 2007, based on Grant Thornton's admissions, the court in the

New Jersey Litigation granted HG Estate's motion for summary judgment and dismissed Grant

Thornton's indemnification claim.  However, in granting summary judgment, the Court noted

that it might reconsider its decision if — and only if — Grant Thornton discovered new,

previously unavailable evidence supporting its indemnity claim.

### Corporación Durango Violates Its Settlement Agreement with HG Estate

21.    Corporación Durango and Grant Thornton were scheduled to begin trial on

Monday, August 13, 2007, but they settled the preceding Friday.  In addition to the monetary

terms of the settlement (which, upon information and belief, amounted to $6 million), Grant

Thornton assigned its previously dismissed indemnity claim against HG Estate to Corporación

Durango.  Upon information and belief, Corporación Durango secured the assignment after

Grant Thornton refused — as did Grant Thornton's insurers, who funded the settlement — to pay

more to Durango.

22.    Corporación Durango has now filed a motion in the New Jersey Litigation

to reopen the judgment dismissing the indemnity claim so that it can freely pursue that claim.

*See* Exhibit B hereto.  In so doing, Corporación Durango is recycling evidence and arguments it

first aired in the Arbitration, not raising new evidence.

7

23.     Corporación Durango's actions clearly breach its Settlement Agreement with HG Estate, including, in particular, the Release contained in the Settlement Agreement which conclusively bars Corporación Durango from pursuing HG Estate in the New Jersey Litigation. The fact that Corporación Durango is, once again, professing to act as an "assignee" is of no relevance. Corporación Durango cannot avoid its contractual obligations by the simple expedient of buying a claim, which clearly is predicated on factual contentions that were previously asserted in the Arbitration, and conclusively resolved by the Settlement Agreement. To allow such conduct would eviscerate the Settlement Agreement of any meaning.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

24.     HG Estate repeats and realleges each and every allegation set forth in Paragraphs 1 through 23 above, as if fully set forth herein.

25.     As a result of Corporación Durango's attempt to assert the indemnity claim against HG Estate, as more fully set forth above, a real, ripe and justifiable controversy exists between HG Estate and Corporación Durango with respect to whether Corporación Durango is barred by the Settlement Agreement from pursuing the indemnity claim.

26.     For the reasons set forth above, HG Estate is entitled to a declaratory judgment that (i) Corporación Durango's assertion of the assigned indemnity claim constitutes a breach of the Settlement Agreement and the General Release, (ii) Corporación Durango is prohibited from pursuing the indemnity claim, and any other claims relating to the subject matter of the Settlement Agreement, against HG Estate, and (iii) HG Estate is entitled to recover any of its costs, damages and expenses incurred in remedying Corporación Durango's breach.

## SECOND CAUSE OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

27.    HG Estate repeats and realleges each and every allegation set forth in Paragraphs 1 through 26 above, as if fully set forth herein.

28.    An implied covenant of good faith and fair dealing exists in every contract and requires the performance of a contract's provisions in good faith. Pursuant to the implied covenant, a party to a contract cannot act arbitrarily or unreasonably, or engage in activities that are manifestly harmful to the other party to the contract.

29.    Corporación Durango's conduct here — purchasing, and attempting to pursue claims, against HG Estate that are identical to the claims extinguished by the Settlement Agreement and Release — clearly violates the covenant of good faith and fair dealing.

30.    Based upon the foregoing, HG Estate is entitled to compensatory and punitive damages for Corporación Durango's breaches of the covenant of good faith and fair dealing implied in the Settlement Agreement and the Release.

## THIRD CAUSE OF ACTION: INJUNCTIVE RELIEF

31.    HG Estate repeats and realleges each and every allegation set forth in Paragraphs 1 through 30 above, as if fully set forth herein.

32.    Pursuant to the Settlement Agreement, HG Estate is entitled to an injunction preventing Corporación Durango from taking any actions in breach of the Settlement Agreement, including but not limited to pursuing the assigned indemnity claim or any other claims relating to the subject matter of the Settlement Agreement, against HG Estate.

WHEREFORE, HG Estate respectfully requests that the Court:

A.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 against Corporación Durango declaring that (i) Corporación Durango's assertion of the indemnification

claim constitutes a breach of the Settlement Agreement and the Release contained therein; and (ii) Corporación Durango is prohibited from pursuing the indemnity claim, and any other claims relating to the subject matter of the Settlement Agreement, against HG Estate.

        B.      Enter a permanent injunction enjoining Corporación Durango from asserting the indemnification claim, or any other claims relating to the subject matter of the Settlement Agreement, against HG Estate;

        C.      Award costs and expenses, including without limitation attorneys' fees, as required by the Settlement Agreement;

        D.      Award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       November 19, 2007

                            FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

                            By: _____
                              Stephanie J. Goldstein
                              Shahzeb Lari

                            One New York Plaza
                            New York, New York 10004-1980
                            (212) 859-8000

                            *Attorneys for Plaintiff*
                            *HG Estate, LLC*

559267

# EXHIBIT

# A

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 5th day of August, 2004, by and among HG Estate, LLC ("HG Estate"), St. Marys Railroad Corporation ("St. Marys" and together with HG Estate, the "HG Parties," and each individually, an "HG Party") and Corporación Durango, S.A. de C.V. ("Durango") (collectively, the "Parties," and each individually, a "Party").

WHEREAS, HG Estate has filed a complaint for breach of contract against Durango in a proceeding styled *HG Estate, LLC v. Corporación Durango S.A. de C.V.*, No. 02 Civ. 10059 (CSH) (the "New York Litigation") before the United States District Court for the Southern District of New York (the "District Court");

WHEREAS, Durango has initiated claims in arbitration against HG Estate asserting certain causes of action, in a proceeding styled *Corporación Durango S.A. de C.V. v. HG Estate, LLC,* No. 50-T-168-00581-02, before the American Arbitration Association (the "Arbitration");

WHEREAS, Durango has initiated a *concurso mercantil* proceeding under the laws of the United Mexican States (the "Concurso");

WHEREAS, on May 20, 2004, Durango commenced a case ancillary to a foreign proceeding styled *In re Petition of Gabriel Villegas Salazar as Foreign Representative of Corporacion Durango, S.A. de C.V.,* No. 04-13587 (RDD) (the "304 Proceeding") under section 304 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

WHEREAS, the Parties desire to resolve the New York Litigation and the Arbitration, upon the terms and subject to the conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the receipt and sufficiency of which as consideration are hereby acknowledged, the Parties represent, covenant and agree as follows:

1.    Incorporation of Recitals. The above recitals are true and correct. They are terms of this Agreement that are binding on the Parties and incorporated herein in their entirety.

2.    No Admission. This Agreement and the negotiations and discussions leading up to this Agreement affect the settlement of claims which are denied and contested, and do not constitute, nor shall they be construed as, an admission of liability by any Party. This Agreement does not constitute an admission by any of the Parties hereto that they have engaged in any unlawful act and each of the Parties denies liability for all claims any other Party had, has, or may have against them on, arising out of, or related to the claims asserted in the New York Litigation or the Arbitration.

3.    Deliveries. HG Estate agrees to execute and deliver the Special Release attached hereto as Exhibit 1, to execute and deliver the General Release attached hereto as Exhibit 2, to dismiss the New York Litigation without prejudice, and to agree to the dismissal of the

Arbitration with prejudice. St. Marys agrees to execute and deliver the Special Release attached hereto as Exhibit 3 and to execute and deliver the General Release attached hereto as Exhibit 4. Durango and Operadora Omega Internacional, S.A. de C.V. ("Operadora Omega") agree to execute and deliver the General Release attached hereto as Exhibit 5, to agree to the dismissal of the New York Litigation without prejudice, and to dismiss the Arbitration with prejudice. The consideration received by the Parties is allocated equally among the claims settled by this Agreement.

4.    Dismissal of the Actions.  Concurrently with the Parties' execution and delivery of this Agreement, the Parties shall, through their respective counsel, execute and deliver to the other Parties the Joint Notices and Stipulations of Voluntary Dismissal, attached hereto as Exhibits 6 and 7.  Durango shall inform the Bankruptcy Court of the Parties' settlement and modify any injunction obtained in the 304 Proceeding to the extent necessary so as to allow for the entry of the Joint Notices and Stipulations of Voluntary Dismissal and the dismissal of the actions as indicated.  The Parties shall jointly file the Joint Notices and Stipulations of Voluntary Dismissal, and shall submit to the District Court in the New York Litigation the Order of Dismissal attached hereto as Exhibit 8.

5.    Releases.  Concurrently with the Parties' execution and delivery of this Agreement, HG Estate shall: (i) execute and deliver to Durango the Special Release attached hereto as Exhibit 1; and (ii) execute and deliver to Operadora Omega the General Release attached hereto as Exhibit 2.  St. Marys shall: (i) execute and deliver to Durango the Special Release attached hereto as Exhibit 3; and (ii) execute and deliver to Operadora Omega the General Release attached hereto as Exhibit 4.  Durango and Operadora Omega shall execute and deliver to HG Estate the General Release attached hereto as Exhibit 5.  The releases shall become effective immediately upon delivery.

6.    Confidentiality.

(a)    Except as specifically provided in paragraph 6(b) below, the Parties shall keep strictly confidential and not disclose to any third party the terms and conditions of this Agreement and/or any negotiations relating to this Agreement (collectively, the "Confidential Information").

(b)    The provisions of paragraph 6(a) above shall not preclude (i) the disclosure of Confidential Information by Durango to its creditors, (ii) the disclosure of the Confidential Information in any court proceeding in which a Party is a plaintiff or defendant, (iii) the disclosure of Confidential Information in response to a court order, legal process or subpoena, regulators (including, in the case of the HG Parties, the New York Attorney General), or as required by any applicable law or regulation, (iv) the disclosure of Confidential Information by any Party to its attorneys, accountants, officers, directors, members, managers or managing agents as may be necessary in order to operate the business of such Party, and, to the extent required, in such Party's financial statements (it being understood that such individuals will be informed of the confidential nature of this Agreement and will agree to be bound by this Agreement and not to disclose the information to any other individual), (v) the disclosure of Confidential Information to the extent required in the Concurso or the 304 Proceeding, and (vi) the disclosure of Confidential Information by the HG Parties to Grant Thornton, LLP.  Should a

Party be required by law, legal process or subpoena to disclose any Confidential Information that Party shall, in advance of providing any response to such law, legal process or subpoena, provide written notice within ten (10) business days of receipt of any request or demand for Confidential Information or at least ten (10) business days before any response date, whichever comes first (unless the response date is less than ten (10) business days from receipt of such request, in which case that Party shall provide written notice as soon as practicable) to all other Parties so that any Party, upon receiving such notice, may intervene and assert its rights and interests in connection therewith.

7.    HG Representations and Warranties.  Each of the HG Parties hereby represents and warrants to Durango that:

(a)    such HG Party (i) is a duly organized and validly existing corporation or limited liability company, as the case may be, under the laws of the jurisdiction of its formation and (ii) has full requisite power and authority to execute, deliver and perform each of its obligations under this Agreement;

(b)    this Agreement has been duly and validly authorized, executed and delivered by such HG Party, and constitutes a valid and legally binding agreement of such HG Party, enforceable against such HG Party in accordance with its terms; and

(c)    neither the execution, delivery or performance by such HG Party of this Agreement, nor compliance by such HG Party with the terms and provisions hereof, will (i) contravene any provision of any applicable law, statute, rule, regulation or order of any court or governmental authority binding upon such HG Party, (ii) conflict or be inconsistent with or result in any breach of any of the terms, covenants, conditions or provisions of, or constitute a default in respect of, any agreement, contract or instrument to which such HG Party is a party or by which any of such HG Party's properties or assets is bound or to which any of them may be subject or (iii) violate any provision of the constituent or other organizational documents of such HG Party.

8.    Durango Representation and Warranties.  Durango hereby represents and warrants to the HG Parties that:

(a)    Durango (i) is a duly organized and validly existing corporation (*sociedad anónima*) under the laws of the United Mexican States and (ii) has full requisite power and authority to execute, deliver and perform each of its obligations under this Agreement;

(b)    Operadora Omega (i) is a duly organized and validly existing corporation (*sociedad anónima*) under the laws of the United Mexican States, (ii) has full requisite power and authority to execute, deliver and perform each of its obligations under this Agreement, (iii) owns all of the shares of Durango Paper Company and (iv) Durango Paper Company owns all of the shares of Durango Georgia Paper Company;

(c)    this Agreement has been duly and validly authorized, executed and delivered by Durango, and constitutes a valid and legally binding agreement of Durango, enforceable against Durango in accordance with its terms; and

(d)    neither the execution, delivery or performance by Durango of this Agreement, nor compliance by Durango with the terms and provisions hereof, will (i) contravene any provision of any applicable law, statute, rule, regulation or order of any court or governmental authority binding upon Durango, (ii) constitute a preferential payment under Mexican law, (iii) conflict or be inconsistent with or result in any breach of any of the terms, covenants, conditions or provisions of, or constitute a default in respect of, any agreement, contract or instrument to which Durango is a party or by which any of Durango's properties or assets is bound or to which any of them may be subject, or (iv) violate any provision of the constituent or other organizational documents of Durango.

9.    <u>Entire Agreement</u>.  This Agreement is the entire agreement between the Parties with respect to the subject matter hereof and it supersedes any prior agreements, promises, representations, or inducements, written or oral, express or implied between the Parties.

10.    <u>Amendment</u>.  No modifications to this Agreement made subsequent to the execution of this Agreement shall be binding or enforceable unless first reduced to writing and signed by authorized representatives of each of the Parties.

11.    <u>Advice of Counsel</u>.  The Parties to this Agreement have had the benefit of counsel of their own choice and have been afforded an opportunity to review this Agreement with chosen counsel.  The Parties, after conferring with counsel, further acknowledge and represent that they have carefully read this Agreement, understand it, and have executed it voluntarily and on their own best judgment, without fraud, duress or undue influence.

12.    <u>Neutral Construction</u>.  This Agreement was prepared by the joint efforts of all Parties and shall be construed without consideration as to which Party actually drafted this Agreement.  No adverse rule of construction or interpretation shall be applied against any Party as the drafting party of this Agreement.

13.    <u>Binding Instrument</u>.  This Agreement shall bind and inure to the benefit of the Parties and their respective parent entities, predecessors, subsidiaries, affiliates, current or former agents, officers, principals, managers, members, directors, executives, employees, attorneys, partners, accountants, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by them.

14.    <u>Survival</u>.  All recitals, representations, warranties, understandings, covenants, pledges, promises and agreements contained herein shall survive the execution and delivery of this Agreement.

15.    <u>Waiver</u>.  No waiver by any Party of any breach by any other Party of any term, condition or obligation set forth in this Agreement shall be deemed a waiver of that provision or any other provision of this Agreement, or a waiver of the same or similar breach thereafter, unless such waiver is first reduced to writing and signed by authorized representatives of each of the Parties.

16.    Severability.  If any term or condition of this Agreement is held to be invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining terms and conditions of this Agreement shall not be affected thereby and shall be deemed valid and enforceable to the fullest extent permitted by law.

17.    Headings.  The headings in this Agreement are for the convenience of the reader only and do not form a substantive part of this Agreement or in any way affect the meaning or interpretation hereof.

18.    Governing Law.  This Agreement shall be governed, construed, enforced and interpreted in accordance with the laws of the State of New York, without regard to its principles involving choice or conflicts of law, and has been entered into by the Parties in recognition of such laws.

19.    Choice of Forum.  All actions, suits or proceedings, whether at law or equity or otherwise, arising out of or relating to this Agreement or the subject matter hereof shall be brought exclusively in the state or federal courts located in the County of New York, State of New York. The Parties consent to personal jurisdiction in the State of New York for purposes of such actions, and service of process for any such action shall be deemed sufficient upon the Parties if effected pursuant to the notice provisions of paragraph 22 herein.

20.    Attorneys' Fees and Costs.  Each Party shall bear its own costs and expenses, including without limitation, attorneys' fees, incurred in connection with the Arbitration and the New York Litigation. In any action arising under this Agreement or relating to the subject matter hereof, the prevailing party shall be entitled to recover from the non-prevailing party its costs, damages and expenses, including without limitation, its reasonable attorneys' fees and expert fees, incurred in connection with such action and any appeal thereof.

21.    Injunctive Relief; Specific Performance.  Each of the Parties recognizes that any breach of this Agreement will irreparably harm every other Party and, accordingly, the Parties recognize that if any Party breaches this Agreement, the opposing Party or Parties shall be entitled to specific performance and to the immediate entry of an injunction and any other relief as may be available to remedy such breach.

22.    Notices.  All notices required or permitted hereunder shall be in writing and shall be sent via facsimile transmission or delivered by hand and addressed as follows:

If to any HG Party:          HG Estate, LLC
                             c/o Fried, Frank, Harris, Shriver & Jacobson LLP
                             One New York Plaza
                             New York, New York 10004
                             Telephone: 212-859-8000
                             Facsimile: 212-859-4000
                             Attention: Lois F. Herzeca, Esq.

If to Durango:                    Corporación Durango, S.A. de C.V.
                                  c/o White & Case LLP
                                  200 South Biscayne Boulevard, Suite 4900
                                  Miami, Florida 33131
                                  Telephone: 305-371-2700
                                  Facsimile: 305-358-5744
                                  Attention: Emilio J. Alvarez-Farre, Esq.

A properly addressed notice shall be deemed received on the business day received, provided that notices by facsimile transmission received after 5:00 p.m. (New York time) will be deemed received on the next business day.

    23.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all of such counterparts together shall constitute one and the same instrument.

    24.    <u>Facsimile Signatures/Duty to Deliver Original</u>.  Any Party may sign this Agreement or any document required to be delivered hereunder via facsimile transmission.  A Party that provides a facsimile signature shall deliver the original signature within five (5) business days to the representative designated to receive notice in paragraph 22 of this Agreement.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the date and year first written above.

HG ESTATE, LLC

By: _____
Print Name:    Bernard Bergreen
Title:    President

STATE OF *New York*    )
COUNTY OF *New York*    )

The foregoing instrument was acknowledged before me this 4TH day of *August*, 2004, by *Bernard Bergreen* who is personally known to me or who has produced *his passport* as identification and did/did not take an oath.

_____
Notary Public

JEROME A. SIEGEL
Notary Public, State of New York
No. 31-4991588
Qualified in New York County
Commission Expires 1/3/06

ST. MARYS RAILROAD CORPORATION

By: _Natalie Moody_

    Name:    Natalie Moody

    Title:    Senior Executive Vice President

STATE OF _New York_   )

                     )

COUNTY OF _New York_  )

    The foregoing instrument was acknowledged before me this _5th_ day of _August_, 2004, by _Natalie Moody_, who is personally known to me or who has produced _____ as identification and did/did not take an oath.

_Joyce W. Chang_

Notary Public

JOYCE W. CHANG
Notary Public, State of New York
No. 01CH6090761
Qualified in New York County
My Commission Expires July 2, 2007

CORPORACIÓN DURANGO, S.A. de CV

By: _Calderón_

Print Name: Prudencio Caldera

Title: Attorney-in-fact

STATE OF Georgia    )
                    )
COUNTY OF Fulton    )

The foregoing instrument was acknowledged before me this 2nd day of August, 2004, by Pulu Calderon who is personally known to me or who has produced a driver's license as identification and did/did not take an oath.

## GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS, that Corporación Durango, S.A. de C.V. ("Durango") and Operadora Omega Internacional, S.A. de C.V. ("Operadora Omega"), in consideration of ten dollars ($10.00) and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, for their shareholders, parents, predecessors, subsidiaries (including Durango McKinley Paper Company), affiliates, current or former agents, officers, principals, directors, executives, employees, attorneys, partners, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by it (collectively, together with Durango and Operadora Omega, the "Releasing Parties"), hereby voluntarily and knowingly, unconditionally and absolutely waive, remise, release, acquit, satisfy, and forever discharge HG Estate, LLC and its members and managers (including, without limitation, the Howard Gilman Foundation, Inc.), and each of their respective parent entities, predecessors, subsidiaries, affiliates, current or former agents, officers, principals, members, managers, directors, executives, employees, attorneys, partners, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by it, and St. Marys Railroad Corporation and its shareholders, parent entities, predecessors, subsidiaries, affiliates, current or former agents, officers, principals, members, managers, directors, executives, employees, attorneys, partners, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by it, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, at law or in equity, whether known or unknown, asserted or unasserted, suspected or claimed, which Corporación Durango, S.A. de C.V. or Operadora Omega Internacional, S.A. de C.V. ever had, now has, or which their shareholders, parent entities, predecessors, subsidiaries, affiliates, current or former agents, officers, principals, directors, executives, employees, attorneys, partners, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by them, hereinafter can, shall or may have, against HG Estate, LLC and its members and managers (including, without limitation, the Howard Gilman Foundation, Inc.), and each of their respective parent entities, predecessors, subsidiaries, affiliates, current or former agents, officers, principals, members, managers, directors, executives, employees, attorneys, partners, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by it, or St. Marys Railroad Corporation and its shareholders, parent entities, predecessors, subsidiaries, affiliates, current or former agents, officers, principals, directors, members, managers, executives, employees, attorneys, partners, representatives, successors and assigns, and any entities controlled, directly or indirectly, legally or beneficially, by it, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents. Provided, however, that nothing in this General Release shall, or shall be deemed to, waive, remise, release, acquit, satisfy, discharge, impair, modify or affect in any way any and all claims, causes of action or other rights any of the Releasing Parties may have against Grant Thornton LLP or any of its partners or employees.

Corporación Durango, S.A. de C.V.

By: _____
Name:  Prudencio Calderon
Title:  Attorney-in-fact

Date:  August 2, 2004

STATE OF GEORGIA        )
                        )
COUNTY OF Fulton        )

       The foregoing instrument was acknowledged before me this 2nd day of August, 2004, by Mr. Prudencio Calderon, who is personally known to me or who has produced a drivers license as identification and did/did not take an oath.

_____
Notary Public

Operadora Omega Internacional, S.A. de C.V.

By: _____
Name: Prudencio Calderon
Title: Attorney-in-fact

Date:  August 2, 2004

STATE OF GEORGIA        )
                        )
COUNTY OF Fulton        )

       The foregoing instrument was acknowledged before me this 2nd day of August, 2004, by Mr. Prudencio Calderon, who is personally known to me or who has produced a drivers license as identification and did/did not take an oath.

_____
Notary Public

# EXHIBIT
# B

TROUTMAN SANDERS
One Riverfront Plaza
Newark, New Jersey 07102
(973) 645-0772
Attorneys for Plaintiffs

| | |
|---|---|
| CORPORACIÓN DURANGO, S.A. de C.V.<br>Plaintiff,<br><br>   -vs.-<br><br>GRANT THORNTON LLP,<br>Defendant/Third-Party Plaintiff,<br><br>   -vs.-<br><br>HG Estate, LLC, Michael Pallen, Dominick<br>Sorrentino, Mayela Rincon Arredondo de<br>Velasco, Miguel Rincon Arredondo, Jose<br>Antonio Rincon Arredondo, Prudencio Calderon,<br>Herberto Baez, and Harris Group, Inc.,<br>Third-Party Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-L-6468-05 CIVIL ACTION |
| DURANGO PAPER COMPANY,<br>Plaintiff,<br><br>   -vs.-<br><br>GRANT THORNTON LLP,<br>Defendant/Third-Party Plaintiff,<br><br>   -vs.-<br><br>HG Estate, LLC, Michael Pallen, Dominick<br>Sorrentino, Mayela Rincon Arredondo de<br>Velasco, Miguel Rincon Arredondo, Jose<br>Antonio Rincon Arredondo, Prudencio Calderon,<br>Herberto Baez, and Harris Group, Inc.,<br>Third-Party Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-L-6893-05 CIVIL ACTION<br><br><br>**NOTICE OF MOTION FOR RELIEF FROM<br>JUDGMENT AND INCORPORATED<br>MEMORANDUM OF LAW** |

COUNSEL:

PLEASE TAKE NOTICE that on November 2, 2007 at 10:00 o'clock in the forenoon, or

as soon thereafter as counsel may be heard, the undersigned attorneys for Corporacion Durango,

shall move for entry of an Order, in the form submitted herewith, granting Corporacion Durango

NEWYORK01 1247507v1 038653-000001

relief from the Court's July 5, 2007 Order granting the Motion for Summary Judgment of Third

Party Defendant HG Estate LLC ("HG Estate").

    PLEASE TAKE FURTHER NOTICE that in support of this motion, Corporacion

Durango shall rely on the Motion for Relief from Judgment and Incorporated Memorandum of

Law served herewith.

    Dated: October 10, 2007

                     Troutman Sanders LLP

                     By: _____
                        David J. Sheehan

TROUTMAN SANDERS
One Riverfront Plaza
Newark, New Jersey 07102
(973) 645-0772
Attorneys for Plaintiffs

OCT -9 PM 3:04

| | |
|---|---|
| CORPORACIÓN DURANGO, S.A. de C.V.<br>Plaintiff,<br><br>-vs.-<br><br>GRANT THORNTON LLP,<br>Defendant/Third-Party Plaintiff,<br><br>-vs.-<br><br>HG Estate, LLC, Michael Pallen, Dominick<br>Sorrentino, Mayela Rincon Arredondo de<br>Velasco, Miguel Rincon Arredondo, Jose<br>Antonio Rincon Arredondo, Prudencio Calderon,<br>Herberto Baez, and Harris Group, Inc.,<br>Third-Party Defendants. | FILED & RECEIVED<br>SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-L-6468-05 CIVIL ACTION |
| DURANGO PAPER COMPANY,<br>Plaintiff,<br><br>-vs.-<br><br>GRANT THORNTON LLP,<br>Defendant/Third-Party Plaintiff,<br><br>-vs.-<br><br>HG Estate, LLC, Michael Pallen, Dominick<br>Sorrentino, Mayela Rincon Arredondo de<br>Velasco, Miguel Rincon Arredondo, Jose<br>Antonio Rincon Arredondo, Prudencio Calderon,<br>Herberto Baez, and Harris Group, Inc.,<br>Third-Party Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-L-6893-05 CIVIL ACTION<br><br><br>__MOTION FOR RELIEF FROM JUDGMENT__<br>__AND INCORPORATED MEMORANDUM__<br>__OF LAW__ |

Corporación Durango S.A. de C.V. ("Durango"), as assignee of Grant Thornton

LLP ("Grant Thornton"), hereby moves for relief from this Court's July 5, 2007 Order granting

the Motion for Summary Judgment of Third Party Defendant HG Estate LLC ("HG Estate"), and in support states:

## Preliminary Statement

At the July 5, 2007 hearing on the HG Estate's Motion for Summary Judgment on Grant Thornton's Third Party Complaint, this Court granted summary judgment against Grant Thornton because Grant Thornton had failed to identify evidence that a management representation letter that it had received from HG Estate contained false statements. The Court, however, recognizing that Grant Thornton's failure to identify that evidence was largely strategic, granted HG Estate's Motion "without prejudice" and invited Grant Thornton to reassert its claims against HG Estate if Grant Thornton later identified evidence of HG Estate's false statements. Grant Thornton now accepts that invitation and comes to the Court with substantial evidence that warrants both relief from the Court's July 5, 2007 Order granting summary judgment in HG Estate's favor and reinstatement of the indemnification claim in Grant Thornton's Third Party Complaint against HG Estate.

## Procedural History and Factual Background

Durango filed the original Complaint in this action on April 27, 2005, alleging that Grant Thornton, an international accounting firm, had included fraudulent or negligent misrepresentations in the audited financial statements of Gilman Paper Company, an entity that Durango had purchased in December 1999. Durango specifically alleged that Grant Thornton had capitalized, and therefore treated as assets, tens of millions of dollars in maintenance costs that should have been expensed, and therefore recorded as losses for the year in which they were incurred. Complaint ¶ 18.

2

that this dispute was to no avail — Grant Thornton settled the claims brought against it by Durango and has sustained losses that it seeks to recover.

The Court granted HG Estate's summary judgment motion, but, recognizing Grant Thornton's predicament, it dismissed the Third Party Complaint without prejudice and invited Grant Thornton to reassert its indemnification claim against HG Estate if evidence of a misrepresentation in Gilman Paper's financial statements came to light. *Id.* at 48:14-19; 51:19-52:11.

<u>Argument</u>

New Jersey Rule 4:50-1 provides, in relevant part, that the "court may relieve a party or the party's representative from a final judgment or order for . . . any . . . reason justifying relief from the operation of the judgment or order." Such relief is warranted here because a wealth of record evidence demonstrates that HG Estate made false representations to Grant Thornton that trigger the indemnification clause in Grant Thornton's July 12, 1999 engagement letter.

In a management representation letter dated April 15, 1999, HG Estate stated that the Carve-Out Financial statements were "fairly presented in conformity with generally accepted accounting principles" ("GAAP"). April 15, 1999 Letter from HG Estate to Grant Thornton (attached hereto as Ex. B) at 2. Substantial record evidence demonstrates that statement to be false.

First, Durango's accounting expert in this action, Robert Rock, opined that certain false representations set forth in the Carve-Out Financial Statements did, in fact, violate GAAP.[1]

---

[1]    Mr. Rock further opined that the Carve-Out Financial Statements contained misrepresentations that violated generally accepted accounting standards and Statements on Standards for Accounting and Review Services. *See id.*

4

HG Estate made a second false statement in the April 15, 1999 management representation letter, by stating that "[d]uring 1997 [Gilman Paper] adopted the policy of capitalizing refurbishments which extend the useful life or increase the capacity of machinery or equipment." April 15, 1999 Letter from HG Estate to Grant Thornton at 4. HG Estate now admits that statement to be false. (Pallen Dep. (5/4/2007) at 113:24-114:4) ("[W]hen I got the first draft of the footnote, I saw the reference to adopted a new policy, which I didn't really . . . Well, I don't think I would have used those words."). Substantial record evidence corroborates that admission. CD App. Ex. 19 (Weiss Dep. (04/19/2005) at 109:14-25, 110:1-25, 111:1-24, 112:1-19); GT App., Ex. 52 (Pennett Dep. (4/13/2007) at 79:10-80:4). Indeed, Gilman's capitalization policy was the same in 1997 as it had been in 1996. CD App. Ex. 3 (Pallen Dep. (5/4/2007) at 96:5-22, 100:9-22, 23-25, 100:1-5, 113:15-25, 114:1-8); GT App., Ex. 52 (Pennett Dep. (4/13/2007) at 79:10-80:4); CD App. Ex. 21 (Ferreira Dep. (04/14/2005) at 75:11-76:7); CD App. Ex. 62 (Amesbury Dep. (05/02/2007) at 94:6-95:10).

This evidence is more than sufficient to create a question of fact as to whether HG Estate made false statements to Grant Thornton that triggered the indemnification provision of Grant Thornton's July 12, 1999 engagement letter.

### Conclusion

WHEREFORE, Corporación Durango, S.A. de C.V., as assignee of Grant Thornton LLP, respectfully requests that this Court enter an Order relieving Grant Thornton from the July 5, 2007 Order granting the HG Estate's Motion for Summary Judgment and reinstating the indemnification claim in Grant Thornton's Third Party Complaint against HG Estate LLC.

Respectfully submitted,

**TROUTMAN SANDERS**
One Riverfront Plaza
Newark, New Jersey 07102

6

(973) 645-0772

Attorneys for Plaintiffs

By: _David J. Sheehan_____

David J. Sheehan

Charles C. Kline
Jason N. Zakia
WHITE & CASE LLP
200 S. Biscayne Boulevard, Suite 4900
Miami, FL 33131-2352
Telephone: (305) 925-4796
Facsimile: (305) 358-5744

7